**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

THOMAS E. MCNULTY, et al.,

          Plaintiffs,

     v.

J.H. MILES AND COMPANY, INC.,

          Defendant.

No. 12-2390 (NLH/KMW)

**OPINION**

**APPEARANCES:**

Michael Raymond Mignogna, Esquire
Mattleman, Weinroth & Miller, P.C.
401 Route 70 East
Suite 100
Cherry Hill, New Jersey 08034
    *On behalf of Plaintiffs Thomas E. McNulty and Ocean Bay*
    *Harvesters, Inc.*

Kelly S. Crawford, Esquire
Riker, Danzig, Scherer, Hyland & Perretti, LLP
Headquarters Plaza
One Speedwell Avenue
P.O. Box 1981
Morristown, New Jersey 07962
    On behalf of Defendant J.H. Miles and Company, Inc.

**HILLMAN, District Judge**

    This matter comes before the Court by way of Defendant J.H.
Miles and Company, Inc.'s motion [Doc. No. 3] to transfer this
action to the United States District Court for the Eastern
District of Virginia, Norfolk Division, pursuant to 28 U.S.C. §
1404(a).  Also before the Court is Defendant's motion [Doc. No.
4] seeking to partially dismiss Plaintiffs' complaint pursuant to

Federal Rule of Civil Procedure 12(b)(6).  The Court has considered the parties' submissions and decides this matter pursuant to Federal Rule of Civil Procedure 78.

For the reasons expressed below, Defendant's motion to transfer venue to the United States District Court for the Eastern District of Virginia, Norfolk Division is granted.  In light of this transfer, Defendant's motion to partially dismiss will be referred to the transferee court for resolution.

**I.   <u>JURISDICTION</u>**

The Court exercises jurisdiction over this matter pursuant to 28 U.S.C. § 1332 based on complete diversity of citizenship between the parties and an amount in controversy in excess of $75,000.  Plaintiff Thomas E. McNulty ("McNulty") is a citizen of the state of New Jersey.  Plaintiff Ocean Bay Harvesters, Inc. ("Ocean Bay") is incorporated and maintains its principal place of business in the state of New Jersey and is therefore deemed to be a citizen of the state of New Jersey.  Defendant J.H. Miles and Company, Inc. ("J.H. Miles") is incorporated, and maintains its principal place of business, in Virginia.  Therefore, complete diversity of citizenship exists between the parties. The amount in controversy is met because the allegations contained in Plaintiffs' complaint sufficiently demonstrate that the damages sought in this action are in excess of $75,000, exclusive of interest and costs.

2

## II.  <u>BACKGROUND</u>

As alleged in the complaint, McNulty and Ocean Bay are engaged in the business of commercial clamming operations whereby Plaintiffs harvest surf clams for sale to consumers by virtue of their ownership of several fishing vessels and allocation permits issued by the federal and state governments.  (Pls.' Compl. [Doc. No. 1] ¶¶ 1-2.)  Defendant J.H. Miles is similarly engaged in the business of commercial clamming operations for the harvesting of surf clams.  (<u>Id.</u> ¶ 3.)  In approximately January of 2006, the parties entered into a contract entitled the "Surf Clam Shell Stock Supply Agreement" (hereinafter, "the Contract"), whereby Defendant allegedly "agreed to buy clams from the Plaintiffs in the minimum amount of 136,640 bushels per calendar year during the term of the Contract ... [from] January 1, 2006 through December 31, 2010."  (<u>Id.</u> ¶ 4; <u>see generally</u> Surf Clam Shell Stock Supply Agreement, Ex. A. to Aff. of John R. Miles [Doc. No. 3-2].)  Plaintiffs allege that the Contract set forth an agreed upon price per bushel for the surf clams based on the prevailing market price.  (Pls.'s Compl. ¶ 5; <u>see also</u> Surf Clam Shell Stock Supply Agreement, Ex. A. to Aff. of John R. Miles [Doc. No. 3-2] 5.)  Plaintiffs allege that for the calendar years 2009 and 2010, Defendant J.H. Miles "failed to purchase the minimum amount of clams pursuant to the Contract and, despite due demand

therefore made by Plaintiffs ..., the Defendant ... failed to pay the balance owed to the Plaintiffs[.]" (Pls.'s Compl. ¶¶ 6-7.) Based on this alleged failure, Plaintiffs seek damages in the aggregate amount of $1,375,712.00 for the 2009 and 2010 calendar years. (Id.) Additionally, Plaintiffs also seek damages in the amount of $1,139,424.00 for Defendant's alleged failure to purchase the required minimum amount of clams for the 2011 calendar year under a theory that the Contract was "tacitly renewed" beyond the initial term ending on December 31, 2010. (Id. ¶ 8.) Plaintiffs contend that because Defendant purchased surf clams from Plaintiffs pursuant to the terms of the Contract in the 2011 calendar year, Defendant "tacitly renewed" the contract for an additional five year term from January 1, 2011 through December 31, 2015. (Id.) Finally, Plaintiffs further maintain that because the Contract was renewed by Defendant's 2011 purchase of clams, "Defendant continues to breach [the] Contract by failing to purchase the minimum number of clams" for the 2012 and that "Defendant has a continuing obligation to buy clams from the Plaintiffs." (Id. ¶ 9.)

Based on these allegations, Plaintiffs bring claims against J.H. Miles for breach of contract, unjust enrichment, detrimental reliance, and material misrepresentation. (Id. ¶¶ 10-20.) Plaintiffs originally filed suit in the Superior Court of New Jersey Law Division for Cape May County on March 19, 2012. On

4

April 23, 2012, Defendant removed the action to United States District Court for the District of New Jersey pursuant to 28 U.S.C. §§ 1441, 1446.  Subsequently, Defendant filed the pending motions seeking to transfer venue in this action to the Eastern District of Virginia, Norfolk Division and to partially dismiss Plaintiffs' complaint.

## III. **DISCUSSION**

In the present motion, Defendant J.H. Miles seeks to transfer this action to the Eastern District of Virginia pursuant to 28 U.S.C. 1404(a).  Section 1404(a) provides in pertinent part that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. § 1404(a).

As the Supreme Court has recognized, Section 1404(a) "is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness."  Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988).  Not only are "Section 1404(a) transfers ... discretionary determinations made for the convenience of the parties[, but they]... presuppose that the court has jurisdiction and that the case has been brought in the correct forum."  Lafferty v. St. Riel, 495 F.3d 72, 76 (3d Cir.

5

2007)(citing <u>Jumara v. State Farm Ins. Co.</u>, 55 F.3d 873, 878 (3d Cir. 1995); 17A Moore's <u>Federal Practice</u>, § 111.02 (Matthew Bender 3d ed. 2006)).

Generally, when considering a motion to transfer under Section 1404(a), district courts not only weigh the enumerated factors — convenience of the parties, convenience of the witnesses, or the interests of justice — but also a number of "private and public interests" to determine which forum may more conveniently facilitate the litigation and better serve the interests of justice.  <u>Jumara</u>, 55 F.3d at 879.  In deciding a motion to transfer under Section 1404(a), the district should bear in mind that this "analysis is flexible and must be made on the unique facts of each case."  <u>Calkins v. Dollarland, Inc.</u>, 117 F. Supp. 2d 421, 428 (D.N.J. 2000) (citing <u>Piper Aircraft Co. v. Reyno</u>, 454 U.S. 235, 249-50 (1981)).  Despite the flexibility of the analysis, however, "[t]he burden of showing a need for transfer [remains] on the movant," in this case, Defendant J.H. Miles, at all times.  <u>In re Amendt</u>, 169 F. App'x 93, 96 (3d Cir. 2006) (citing <u>Jumara</u>, 55 F.3d at 879).

As the Third Circuit explained in <u>Jumara</u>, the relevant private interests the district court should review include:

> plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses -- but only to the extent that

6

> the witnesses may actually be unavailable for
> trial in one of the fora; and the location of
> books and records (similarly limited to the extent
> that the files could not be produced in the
> alternative forum).

Id. at 879 (internal citations omitted).  The pertinent public
interest a district court should consider include:

> the enforceability of the judgment; practical
> considerations that could make the trial easy,
> expeditious, or inexpensive; the relative
> administrative difficulty in the two fora resulting
> from court congestion; the local interest in
> deciding local controversies at home; the public
> policies of the fora; and the familiarity of the
> trial judge with the applicable state law in
> diversity cases.

Id. at 879-80 (citations omitted).

Prior to assessing the various private and public interests,
"[t]he first step in a court's analysis of a transfer motion is
to determine whether venue would be proper in the transferee
district." Clark v. Burger King Corp., 255 F. Supp. 2d 334, 337
(D.N.J. 2003).  "If the first prong of the inquiry is satisfied,
the court then should determine whether a transfer would be in
the interests of justice." Id. (citing Jumara, 55 F.3d at 879).
In making this threshold determination, the Court notes that
pursuant to 28 U.S.C. § 1391(b), "[a] civil action may be brought
in --

> (1) a judicial district in which any defendant
>     resides, if all defendants are residents of
>     the State in which the district is located;
> (2) a judicial district in which a substantial
>     part of the events or omissions giving rise
>     to the claim occurred, or a substantial

<blockquote>
part of property that is the subject of the<br>
action is situated; or

(3)   if there is no district in which an action<br>
may otherwise be brought as provided in<br>
this section, any judicial district in<br>
which any defendant is subject to the<br>
court's personal jurisdiction with respect<br>
to such action.
</blockquote>

Here, Defendant argues that Plaintiffs could have filed their complaint against Defendant in the Eastern District of Virginia. (Br. in Supp. of Mot. By Def. to Transfer Venue [Doc. No. 3-1] (hereinafter, "Def.'s Br."), 4.)  Defendant J.H. Miles contends that the Eastern District of Virginia would have had both subject matter over this diversity action pursuant to 28 U.S.C. § 1332, and personal jurisdiction over the parties involved. (Id. at 4-5.)  J.H. Miles further asserts that venue would have been proper under any of the three subsections of Section 1391(b)[1] because Defendant resides in the Eastern District of Virginia, because the Eastern District is "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred[,]" and because J.H. Miles was subject to personal jurisdiction in the Eastern District at the time of the alleged breaches. (Id. at 5-6.)

Although Plaintiffs oppose Defendant's motion to transfer generally, Plaintiffs do not offer any argument in response to

---

1.  Defendant cites to 28 U.S.C. § 1391(a), but the Court notes that Section 1391(b) sets forth the relevant provisions governing venue in civil actions such as this.

J.H. Miles' contention that Plaintiffs could have brought this action in the Eastern District of Virginia in the first instance and that venue would have been proper in that district had Plaintiffs done so.  Accordingly, Plaintiffs have failed to challenge the propriety of the Eastern District of Virginia as a potential venue for this action, and the Court agrees with Defendant that venue would have been proper in the Eastern District of Virginia in this diversity case because the Eastern District is the judicial district wherein the only Defendant to this action resides.[2]  See 28 U.S.C. § 1391(b)(1).

Having determined that venue would be proper in the Eastern District of Virginia – the transferee district – the threshold inquiry on Defendant's motion to transfer is satisfied.  The Court now considers whether transfer would be in the interests of justice pursuant to the various private and public interest factors set forth in Jumara.  See Clark, 255 F. Supp. 2d at 337.

IV.  **ANALYSIS**

    **A. Private Interests**

        *(1) Plaintiffs' Forum Preference*

In the Third Circuit, "a plaintiff's choice of a proper forum is a paramount consideration in any determination of a

---

2.  For purposes of venue Defendant J.H. Miles is a resident of Virginia because it is admittedly subject to personal jurisdiction in the Eastern District of Virginia with respect to this action.  See 28 U.S.C. § 1391(c)(2).

transfer request, and [plaintiff's] choice '... should not be lightly disturbed.'"  Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970) (citation omitted).  Generally, the choice of a plaintiff who selects his home forum is "entitled to greater deference" than that of a plaintiff who chooses a foreign forum, see Piper Aircraft Co. V. Reyno, 454 U.S. 235, 255-56 (1981), "at least when [that choice] coincides with a district in which a substantial part of the events or omissions giving rise to the claim occurred."  Sarver v. Hurt Locker, LLC, No. 2:10-cv-01076, 2010 WL 4810813, at *3 (D.N.J. Nov. 18, 2010).  However, the plaintiff's choice of forum is not dispositive, see Delta Air Lines, Inc. v. Chimet, S.p.A., 619 F.3d 288, 295-96 (3d Cir. 2010), and "courts give *substantially* less weight to a plaintiff's forum choice when the dispute *at the heart* of a lawsuit occurred almost entirely in another state."  Santi v. Nat'l Bus. Records Mgmt., LLC, 722 F. Supp. 2d 602, 607 (D.N.J. 2010) (emphasis added).

Here, Plaintiff Ocean Bay is a citizen of New Jersey because it is incorporated in and maintains its principal place of business in New Jersey.  Plaintiff McNulty is also a citizen of New Jersey, and Plaintiffs filed this action in their home forum.  Ordinarily, this would entitle Plaintiffs' choice of forum to a greater degree of deference.  However, as set forth more fully below, the Court finds that in this particular case, a

substantial part of the events and omissions giving rise to Plaintiffs' claims occurred outside of New Jersey.  As a result, although Plaintiffs brought this action in their home forum, their choice to do so is not dispositive and may be given substantially less deference because litigating this matter in the District of New Jersey does not coincide with the district wherein the heart of this dispute occurred.  See Piper, 454 U.S. at 255-56; Sarver, 2010 WL 4810813, at *3; Santi, 722 F. Supp. 2d at 607.  Thus, the Court concludes that this factor weighs only slightly against transferring this action.

### (2) Defendant's Forum Preference

Defendant, a Virginia corporation with its principal place of business in Norfolk, Virginia, prefers to resolve this dispute with Plaintiffs in the Eastern District of Virginia, Norfolk Division.  (Def.'s Br. 9.)  Accordingly, Defendant argues that this factor weighs in favor of transfer.  Plaintiffs counter this argument only by stating that Defendant's forum preference is just one factor among many that the Court must consider and that Defendant's preference "cannot alone overcome the Plaintiffs' preference[.]" (Pls.' Opp'n 7.)  While Plaintiff is correct that Defendant's preference is only one factor the Court must consider, the Court agrees with Defendant and finds that this factors weighs moderately in favor of transfer, particularly in this case where a substantial part of the events and omissions

giving rise to the heart of Plaintiffs' claims occurred in
Virginia.

   *(3) Whether the Claim Arose Elsewhere*

  The issue of where a substantial part of the events or
omissions giving rise to Plaintiffs' claims occurred is sharply
disputed between the parties.  Defendant J.H. Miles argues that
Plaintiffs' choice of the District of New Jersey should not be
given substantial deference because the alleged failures by
Defendant to make payments pursuant to the contract – failures
which form the crux of Plaintiffs' complaint – occurred in
Virginia, not New Jersey.  (Def.'s Br. 6.)  From Defendant's
prospective, Plaintiffs' primary allegation is that Defendant
owed Plaintiffs certain minimum monetary amounts in each calendar
year of the contract for the purchase of a required minimum
amount of surf clams, and that Defendant allegedly failed to make
these required payments.  (Id. at 7.)  J.H. Miles asserts that
these alleged failures to pay were omissions which occurred in
Virginia at Defendant's principal place of business – the
location where J.H. Miles made the decision not to pay
Plaintiffs.  (Id.)  According to Defendant, the "main connection"
this suit has to New Jersey is that Plaintiffs are "based in New
Jersey." (Id.)

  In opposing the motion, Plaintiffs argue that New Jersey,
Plaintiffs' home district, has a strong connection to the central

facts of this action.  (Br. in Opp'n to Def.'s Mot. to Transfer
Venue [Doc. No. 7] (hereinafter, "Pls.' Opp'n"), 5.)  According
to Plaintiffs, Defendant has "mischaracterized" the nature of
this action by asserting that the central facts of this lawsuit
merely surround the failure to make payments under the contract.
(Id.)  Despite making this argument, Plaintiffs specifically
concede later that "[t]he breaches in the present case result
from a failure to pay for services contracted."  (Id. at 6.)
this concession demonstrates to the Court that the heart of the
dispute here centers on the alleged breach of contract by
Defendant based on the failure to pay pursuant to its terms.
Therefore, the Court looks to the factors relevant to breach of
contract claims to determine where Plaintiffs' claims arose.

     With respect to a breach of contract claim, the Court must
"'consider several specific factors that relate to where the
claim arose, including (1) where the contract was negotiated or
executed; (2) where the contract was to be performed; and (3)
where the alleged breach occurred.'"  Business Store, Inc. v.
Mail Boxes Etc., No. 11-3662, 2012 WL 525966, at *7 (D.N.J. Feb.
16, 2012) (citing Advanced Technologies and Installation Corp. v.
Nokia Siemens Networks US, L.L.C., No. 09-6233, 2010 WL 3522794,
*8 (D.N.J. Sep. 2, 2010)).  Here, it appears that at least some
of the initial negotiations for the Contract took place in New
Jersey, while others took place in Ocean City, Maryland.  (See

Aff. of Thomas E. McNulty [Doc. No. 7-1] ¶¶ 11-12; <u>see also</u> Second Aff. of John R. Miles [Doc. No. 12-1] ¶¶ 11-12.)  Yet other negotiations appear to have also taken place in Virginia because once the initial draft of the Contract was prepared, the Contract was sent to Defendant in Virginia for review and "slight alterations" were made at that time before the Contract was executed.[3]  (<u>See</u> Aff. of Thomas E. McNulty [Doc. No. 7-1] ¶¶ 13-14.)  With respect to the execution of the Contract, Plaintiffs make no representations regarding where Plaintiffs executed the Contract, but Defendant twice represents that the Contract was executed by Defendant in Virginia.  (<u>See</u> Aff. of John R. Miles [Doc. No. 3-2] ¶ 15; <u>see also</u> Second Aff. of John R. Miles [Doc. No. 12-1] ¶ 13.)  These representations regarding execution of the Contract demonstrate an additional relevant connection to the State of Virginia.

To the extent the Court must consider where the services under the contract were performed, Plaintiffs state that the vessels which conducted the harvesting of clams for Defendant left from "New Jersey docks to harvest clams off the coast of

---

3.  The parties also vehemently dispute whether Plaintiffs first approached Defendant about the prospect of doing business together or whether Defendant initiated the discussions regarding a prospective business relationship.  The Court does not resolve this factual dispute here except to note that it indicates to the Court that negotiations regarding the Contract at issue ultimately occurred, at least in part, in New Jersey, Maryland, and Virginia.  Accordingly, it is clear that the negotiations for this Contract did not occur only in New Jersey.

both Maryland and New Jersey; [and that] the clams were then
delivered to the Defendant's facility in Ocean City, Maryland."
(See Aff. of Thomas E. McNulty [Doc. No. 7-1] ¶ 22.)
Significantly, Plaintiffs attest to the fact that all deliveries
of their clams were made to the same Ocean City, Maryland
facility owned and operated by Defendant, a Virginia based
corporation.  (Id. ¶ 37.)  Therefore, it appears to the court
that the substantially all of Plaintiffs' performance under the
contract occurred outside of New Jersey.[4]

---

4.  The Court recognizes that Plaintiffs, as part of their
general business operations, harvest clams pursuant to permits
issued by both the federal government and the government of the
State of New Jersey.  (Aff. of Thomas E. McNulty [Doc. No. 7-1] ¶
9; see also Surf Clam Shell Stock Supply Agreement, Ex. A. to
Aff. of John R. Miles [Doc. No. 3-2] 1.)  The Contract here
provides that all clams purchased by Defendant were to be landed
and delivered in Maryland, except for any clams harvested under
Plaintiffs' New Jersey permits.  (Surf Clam Shell Stock Supply
Agreement, Ex. A. to Aff. of John R. Miles [Doc. No. 3-2] ¶ 6.1.)
Under Plaintiffs' New Jersey permits, Plaintiffs were required to
first land any surf clams harvested pursuant to those permits in
New Jersey before making delivery to Defendant's Maryland
facility.  (Id.)   Here, Plaintiffs make no representations that
any of the clams delivered under this Contract were first landed
in New Jersey before being delivered to Defendant's Maryland
facility.  Therefore, it appears that the clams harvested by
Plaintiffs for Defendant were harvested in accordance with
federal permits only, as opposed to those issued by the State of
New Jersey.  In the absence of any record support, by way of
Plaintiff McNulty's affidavit or otherwise, that services
performed under this contract actually had a substantial
connection to New Jersey or occurred in New Jersey (such as the
landing of clams in New Jersey), the Court is hard pressed to
accept McNulty's conclusory assertion that New Jersey "is the
location where all services were rendered under the [C]ontract at
issue."  (Aff. of Thomas E. McNulty [Doc. No. 7-1] ¶ 35.)
Furthermore, this representation, although contained in McNulty's
sworn affidavit, is clearly belied by the fact that Plaintiff

With respect to where the breach of the Contract at issued occurred, Defendant's alleged failure to purchase and pay for the required minimum number of surf clams under the Contract is the heart of Plaintiffs' entire lawsuit and serves as the basis for each of the four claims asserted in the complaint.  "Where a party has [] failed to make a payment, the locus of the action is where the party failed [to] take that action rather than where the result is felt."  Stalwart Capital, LLC v. Warren Street Partners, LLC, No. 11-5249, 2012 WL 1533637, *4 (D.N.J. Apr. 30, 2012) (citing Cottman Transmission Systems, Inc. v. Martino, 36 F.3d 291, 295 (3d Cir. 1994) ("The omissions that [plaintiff] cites ... [defendant's] failure to return various materials and failure to remit payments-actually occurred in Michigan, not in Pennsylvania. Even though the result was [plaintiff's] non-receipt of those items in Pennsylvania, the omissions bringing about this result actually occurred in Michigan.")

Here, the record reflects that Defendant's alleged failure to purchase the minimum number of surf clams and make payment for those minimum purchases are omissions which occurred in Virginia. In fact, Plaintiffs do not allege that any affirmative wrongdoing or any failures to act by Defendant occurred in New Jersey. Plaintiffs only contend that Defendant failed to make the minimum

---

McNulty representation that all deliveries were made in Maryland. (Id. ¶ 37.)

required purchases for surf clams in the relevant years and
failed to make the payments for these required minimum
purchases.[5]  These alleged failures by J.H. Miles occurred at
Defendant's offices in Norfolk, Virginia where these decisions
were allegedly made.  See Stalwart Capital, 2012 WL 1533637, *4;
Cottman, 36 F.3d at 295.  Thus, the alleged breach occurred, if
at all, in Virginia.

     Having considered where the Contract at issue was
negotiated, executed, performed, and allegedly breached, the
Court finds that a substantial part of the events and omissions
giving rise to Plaintiffs' claims occurred outside of New Jersey
with the most significant events and omissions having occurred in
Virginia.  Accordingly, the Court finds that this factor weighs
heavily in favor of transfer because Plaintiffs' claims arose
outside of New Jersey.

          *(4) Parties' Relative Physical & Financial Condition*

     In seeking a transfer to the Eastern District of Virginia,
Defendant J.H. Miles asserts that it is not aware of any physical
or financial condition which prevents this transfer.  (Def.'s Br.
9.)  J.H. Miles bases this assertion on the parties' business
dealings to date which included a regular course of business over
several years for the shipment and delivery of surf clams by

---

5.  As noted supra, Plaintiffs concede that "[t]he breaches in
the present case result[ed] from a failure to pay for services
contracted."  (Pls.' Opp'n 6.)

Plaintiffs and payment by Defendant.  (Id.) (citing Aff. of John

R. Miles [Doc. No. 3-2] ¶ 37.)

In opposing this transfer, Plaintiffs represent that

Plaintiff Ocean Bay "is a small, local business" and that its

principal, Plaintiff McNulty, "oversees all aspects of the

business, including maintenance of the vessels and scheduling of

the employees."  (Pls.' Opp'n 8) (citing Aff. of Thomas E.

McNulty [Doc. No. 7-1] ¶¶ 41-46).  According to Plaintiffs,

transferring this matter to the Eastern District of Virginia

would have "a significant detrimental effect on [Plaintiff

McNulty's] business."  (Pls.' Opp'n 8) (citing Aff. of Thomas E.

McNulty [Doc. No. 7-1] ¶¶ 41-46).

Specifically, in his affidavit, Plaintiff McNulty avers that

"it would be extremely burdensome to litigate this dispute in

Virginia" and that this proposed transfer would "cause a great

deal of expenditures, which [he] cannot afford, in order to

transmit records, documents, and proofs to Virginia."  (Aff. of

Thomas E. McNulty [Doc. No. 7-1] ¶¶ 41-42.)  Plaintiff McNulty

also states that the cost he would bear to have his "witnesses

travel to Virginia is unreasonable and unaffordable."  (Id. ¶

43.)  Plaintiff McNulty further represents that the nature of his

business requires him to conduct operations from New Jersey, and

therefore he will suffer a loss of income if this matter is

litigated in Virginia because he will not be able to harvest

18

clams during the time spent in, and traveling to, Virginia.  (Id. ¶ 44.)  Finally, Plaintiffs argue that Defendant is "much more able to bear costs of litigating a matter outside the State of [its] headquarters" because Defendant is a "much larger corporation with multiple facilities [which] chose to do business in New Jersey[.]"  (Pls.' Opp'n 8.)

In response, Defendant J.H. Miles avers that it has lost money for five of the last seven years and that its financial condition permits the case to be transferred to the Eastern District of Virginia.  (Def.'s Reply Br. [Doc. No. 12] 9; citing Second Aff. of John R. Miles [Doc. No. 12-1] ¶ 38.)  Defendant further counters Plaintiffs' claims of financial hardship by pointing to some evidence that Plaintiff McNulty is also actively involved in the harvesting of scallops, in addition to surf clams, and owns several other vessels and businesses used for the purpose of harvesting scallops.  (See Exs. A-H to Second Aff. of John R. Miles [Doc. No. 12-1].)  Defendant also challenges Plaintiff McNulty's assertion that he would lose income based on his inability to harvest clams if this matter is litigated in Virginia.  Defendant asserts that Plaintiff McNulty does not captain any of the boats which he owns for clamming, but rather he employs captains and crews which work on his boats and harvest clams or scallops regardless of where McNulty may be at the time. (Def.'s Reply Br. 8.)  Defendant contends that this evidence

19

demonstrates that Plaintiff McNulty would not suffer a financial hardship if this matter was transferred to the Eastern District of Virginia. (Id. at 7-9.)

Here, the representations regarding the financial condition of Plaintiff Ocean Bay and Plaintiff McNulty as set forth in the McNulty Affidavit, including the expense of transmitting records, documents, and proofs to Virginia, along with the cost to have witnesses travel to Virginia, weigh slightly against transfer. On the other hand, Defendant's assertions regarding its own financial status, operating at a loss for five of the last seven years, and the size and scale of its business compared to Plaintiffs' weigh slightly in favor of transfer.[6]

Moreover, while Plaintiff McNulty asserts that he will lose income if this case is litigated in Virginia because he will be unable to harvest clams during that time, these representations appear somewhat contrary to others made in his affidavit. For example, Plaintiff McNulty represents that "[a]ll boats used by Ocean Bay are docked in New Jersey[,]" that his "boats left their New Jersey docks to harvest clams[,]" and that McNulty "or one of [his] associates, will testify as to the harvesting, purchasing,

---

6. Neither party submitted any documentary evidence such as tax returns, accounting records, or bank statements for example, to demonstrate their respective financial condition to the Court. The parties only submitted the affidavits of Plaintiff McNulty and John R. Miles. Accordingly, the Court has considered only the representations sworn to by McNulty and Miles in evaluating this private interest factor.

and delivering of clams[.]" (Aff. of Thomas E. McNulty [Doc. No. 7-1] ¶¶ 8, 22, 30.)  Plaintiffs also contend that Plaintiff McNulty "oversees all aspects of the business, including maintenance of the vessels and scheduling of the employees." (Pls.' Opp'n 8.)  These representations suggest to the Court that Plaintiffs have multiple employees and numerous fishing vessels which can conduct clam harvesting operations even during times when Plaintiff McNulty is otherwise unavailable.[7]

However, on balance, taking all representations made by the parties, the Court concludes that this factor neither weighs in favor of or against transfer.

> (5) *Convenience of the Witnesses &*
> (6) *Location of Books and Records*

The fifth and sixth private interests factors are "the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora ....; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)...." Jumara, 55 F.3d at 879 (internal citations omitted).  The Court finds that neither of these two

_____

7.  Reason seems to indicate that if Plaintiff McNulty owns multiple vessels, he can physically only captain and man one vessel at any given time, and so any other vessels would necessarily need to be captained and manned by other employees. If that is how McNulty runs his business operations on a regular basis, then requiring his presence to litigate his own claims against Defendant in Virginia would not be an unreasonable burden to impose on McNulty or Ocean Bay.

factors weigh either in favor or against transfer in this
particular case.  Neither party has represented that witnesses,
books, or records could not be made available in one forum but
not in the other.  While both parties make representations that
their respective preferred forum is the location of relevant
witnesses, accounting records, and other documents, neither party
has demonstrated the actual unavailability of any specific
witnesses or records in either New Jersey or Virginia.
Accordingly, the Court finds that these factors are neutral with
respect to the issue of transfer.

After careful consideration of these factors, the Court
concludes that the private interests weigh decidedly in favor of
transfer given that Plaintiffs' choice of forum is only entitled
to slight deference here and a substantial part of the events and
omissions giving rise to the claims occurred outside of New
Jersey.

   **B.   Public Interests**

Here the parties do not address the first, second, and fifth
public interest factors regarding the enforceability of a
judgment; the practical considerations that could make the trial
easy, expeditious, or inexpensive; and the public policies of the
fora.  However, the Court recognizes that any judgment in this
case would be enforceable in Virginia against Defendant, a
Virginia corporation.  Therefore, the Court does not foresee any

22

issues with enforceability of a judgment following transfer to the Eastern District of Virginia and finds this factor weighs in favor of transfer.  As the parties have failed to address either the public policies of New Jersey and Virginia or any practical considerations that could make trial easier, more expeditious, or less expensive in one forum versus the other, the Court will not speculate on these issues.  Therefore, the second and fifth factors are neutral with respect to the issue of transfer.

With respect to the third public interest factor – relative administrative difficulty in the two fora resulting from court congestion, Defendant points out that the median time interval from filing of the complaint to the time of trial in the Eastern District of Virginia is a mere 12.8 months, as opposed to the 43.6 month median time interval in the District of New Jersey.  (Def.'s Br. 13) (citing Administrative Office of the U.S. Courts, Judicial Business of the United States Courts, 2011 (available at http://www.uscourts.gov/uscourts/Statistics/JudicialBusiness/2011 /appendices/T03Sep11.pdf).  This difference is substantial as it indicates that on average cases which go to trial in the Eastern District of Virginia arrive at that stage of the litigation nearly three and one-half times faster than cases which go to trial in the District of New Jersey.

Plaintiffs do not dispute the accuracy of these figures, but rather argue that the "fact that a Court may be more or less

congested [than another] should not act to impede ...
Plaintiffs['] ability to litigate matters in their home forums."
(Pls.' Opp'n 11.)  However, as the Court set forth supra,
Plaintiffs' choice of their home forum is entitled to only the
slightest degree of deference because the events and omissions at
the heart of the lawsuit arose outside of the District of New
Jersey.  Although relative court congestion is not the most
important factor on a motion to transfer and alone is
insufficient to warrant a transfer, when considered in relation
to the lack of substantial events occurring in this District,
this factor weighs rather strongly in favor of a transfer to the
Eastern District of Virginia.  See Reed v. JTH Tax, Inc.,
07-1804, 2007 WL 2416445, at *5 (D.N.J. Aug. 21, 2007) (finding
the factor of court congestion favored transfer to the Eastern
District of Virginia from the District of New Jersey where the
median time from filing to trial in New Jersey was 30.7 months as
compared to 9.6 months in Virginia for 2006).

Under the fourth public interest factor, the Court finds
that Virginia has a more substantial local interest in deciding
this local controversy at home as compared to the state of New
Jersey.  Defendant argues that Virginia's strong local interest
in adjudicating this matter stems from the fact that the center
of the dispute revolves around the lack of payments which
occurred in Virginia.  (Def.'s Br. 11.)  Defendant also contends

24

that residents of the Norfolk area have a vested interest in this case which concerns a Virginia corporation's failure to make payments under a Contract governed by Virginia law, and that the obligation of jury duty is more properly imposed on the citizens of Virginia than New Jersey.  (Id. at 12.)

Plaintiffs, however, assert that New Jersey has a much more significant interest in this dispute because "an overwhelming proportion of the clamming companies are based in New Jersey[,]" the clams harvested under the Contract "never left the area surrounding this District[,]" the boats used were docked in New Jersey, the clams were harvested in Maryland and New Jersey, and the clams were shipped to Maryland.  (Pls.' Opp'n 10-11.) Plaintiffs further contend that there is a significant connection to New Jersey because the ultimate destination for the clams was Campbell's Soup, a large corporation based in Camden, New Jersey. (Id. at 11.)

The Court finds that Plaintiffs contentions regarding New Jersey's local interest in this dispute are weak.  Initially, the Court notes that while New Jersey may have a local interest in protecting its citizens from financial harm, Virginia may have a similar local interest in regulating any alleged wrongdoing by Virginia corporations.  At its core though, this case is about a breach of contract by a Virginia corporation and its alleged failure to pay Plaintiffs, New Jersey citizens, under that

Contract.  This case is not about the specific location of clams or protecting the overall integrity of the clamming industry in New Jersey as Plaintiffs seem to suggest.

Moreover, even assuming that was the central issue in this case, Plaintiffs are inconsistent with respect to what sort of connection New Jersey actually had to the harvesting of the clams here.  For example, at the same time that Plaintiffs represent that the clams never left the area surrounding the District of New Jersey, Plaintiffs also assert that all the clams were shipped to the state of Maryland.  (Pls.' Opp'n 11.) Additionally, to the extent Plaintiffs argue that the ultimate destination of the clams harvested under the Contract was Campbell's Soup in Camden, New Jersey, Defendant has submitted evidence that while Campbell's Soup has administrative offices in Camden, none of the clams harvested under this Contract were delivered to that Campbell's location, but rather to locations in North Carolina, Ohio, Texas, California, and Canada.  (See Second Aff. of John R. Miles [Doc. No. 12-1] ¶¶ 15-17.)  Ultimately, this dispute relates centrally to Defendant's alleged failure to order and pay for a required minimum number of clams, and thus the final destination of clams that were actually purchased by Defendant has little to do with establishing New Jersey's local interest in this breach of contract action. Therefore, there appears to be very little connection to New Jersey other than

26

Plaintiffs being New Jersey citizens, and the Court finds it would be improper to impose jury duty on the citizens of New Jersey in this case.  Accordingly, this factor weighs significantly in favor of transfer.

The sixth public interest factor requires the Court to assess the familiarity of the trial judge with the applicable state law in this diversity case.  As set forth in the Contract at issue, Virginia law governs the dispute in this breach of contract action.  (See Surf Clam Shell Stock Supply Agreement, Ex. A. to Aff. of John R. Miles [Doc. No. 3-2] ¶ 12.4.)  Although "federal district courts are regularly called upon to interpret the laws of jurisdictions outside of the states in which they sit[,]" see Yocham v. Novartis Pharms. Corp., 565 F. Supp. 2d 554, 560 (D.N.J. 2008), the Court notes that "[j]ustice requires that, whenever possible, a diversity case should be decided by the court most familiar with the applicable state law." NCR Credit Corp. v. Ye Seekers Horizon, Inc., 17 F. Supp. 2d 317, 323 (D.N.J. 1998) (citation and internal quotations omitted).

Here, the parties do not dispute that Virginia law applies to Plaintiffs' claims for breach of contract, unjust enrichment, detrimental reliance, and material misrepresentation.  (Pls.' Opp'n 11.)  Given the considerable local interest Virginia has in the resolution of this dispute, the fact that a substantial part of the events and omissions giving rise to Plaintiffs' claims

27

occurred in Virginia, and the fact that Virginia law governs this dispute, justice requires that this diversity case be decided by the court most familiar with the applicable state law, that is the Eastern District of Virginia, as that court has far more occasion to apply Virginia law than this Court does sitting in New Jersey.  Thus, this factor weighs moderately in favor of transfer to the Eastern District Virginia.

In conclusion, considering all the relevant private and public interest factors applicable on a motion to transfer under Section 1404(a) as set forth in detail above, the Court finds that on balance, Defendant J.H. Miles has shown that these factors weigh in favor of transfer and has successfully carried its burden in the circumstances of this particular case.  The motion to transfer is therefore granted.

Having granted Defendant's motion to transfer this case to the Eastern District of Virginia, Norfolk Division, the Court refers the pending motion to partially dismiss Plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) to the transferee court for resolution.  See, e.g., Gianakis v. Hilton Tucson El Conquistador Golf and Tennis Resort, No. 12-4268, 2012 WL 5250463, at *4 (D.N.J. Oct. 22, 2012) (declining to decide "any other issues presented in the motion to dismiss, which should be decided by the transferee court."); Riverview Med. Ctr. v. F.A. Davis Co., No. 08-3770, 2008 WL 4754874, at *1,

28

4 (D.N.J. Oct. 27, 2008) (noting that the court would not address the parties' other pending motions seeking to dismiss the complaint, to strike portions of the complaint, and partial summary judgment in light of its decision to grant defendant's motion to transfer); <u>Fortay v. Univ. of Miami</u>, No. 93-3443, 1994 WL 62319, at *14 (D.N.J. Feb. 17, 1994) (leaving pending motions under Rule 12 for resolution by the transferee court after granting motion to transfer); <u>cf.</u> <u>Liberi v. Taitz</u>, 425 F. App'x 132, 134 (#d Cir. 2011) (concluding that "[a]ll unresolved motions shall be decided by the transferee courts because we lack jurisdiction to determine the merits ... after grant of motion to transfer venue and lodging of papers with transferee court's clerk, 'the transferor court—and the appellate court that has jurisdiction over it—loses all jurisdiction over the case and may not proceed further with regard to it'") (citing 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3846, at 69, 79 (3d ed. 2007)).

**V.   <u>CONCLUSION</u>**

For the foregoing reasons, Defendant J.H. Miles' motion to transfer venue in this action to the Eastern District of Virginia, Norfolk Division is granted.  Additionally, the pending motion to partially dismiss Plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) is referred to the

transferee court for resolution.  An Order consistent with this
Opinion will be entered.


Dated: December 19, 2012          /s/ Noel L. Hillman
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.